UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CRIMINAL ACTION NO. 7:9-cr-13-GFVT-EBA-2
(Related Civil Case No. 7:13-cv-7271-GFVT-EBA)

UNITED STATES OF AMERICA,                                                                PLAINTIFF,

V.                                  **MAGISTRATE JUDGE'S**
                              **REPORT AND RECOMMENDATION**

DWAUNE GRAVLEY,                                                                         DEFENDANT.

\* \* \* \* \* \* \*

**INTRODUCTION**

On January 20, 2011, while incarcerated at the United States Penitentiary Big Sandy, Dwaune Gravley was charged with one count of first degree murder in violation of 18 U.S.C. § 1111(a) and (b), one count of conspiracy to commit murder in violation of 18 U.S.C. § 1117, and four additional counts relating to the murder of fellow inmate Shamoni Peterson. [R. 190]. On April 1, 2011, a jury found Gravley guilty on all counts, see [R. 297], and he was sentenced to life in prison on September 8, 2011. [Rs. 328, 329]. Judgment was entered on September 13, 2011, and the Sixth Circuit affirmed the judgment on October 15, 2014. [R. 379]. On April 1, 2013, Defendant filed a Motion to Vacate under 28 U.S.C. § 2255, [R. 364], and on February 1, 2016, filed a Supplemental § 2255 Motion. [R. 387]. The Government filed a response objecting to his claims on September 26, 2016, [R. 391], and Gravley replied on December 2, 2016. [R. 397].

Consistent with local practice, this matter has been referred to the undersigned to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned previously issued a Report and Recommendation, [R. 365],

1

recommending that Gravley's § 2255 petition be dismissed without prejudice where his direct appeal was still pending at the time. However, because Defendant's direct appeal is now resolved, see [R. 379], the matter is now ripe for federal collateral review. The undersigned will vacate his prior Report and Recommendation, [R. 465], and recommend that Defendant's § 2255 Motion to Vacate, [R. 364], and Supplemental § 2255 Motion, [R. 387], be denied for the reasons set forth below.

## **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

On March 19, 2009, Defendant Dwaune Gravley was indicted with first degree murder, conspiracy to commit murder, assault resulting in serious bodily injury, and three additional counts related to the death of inmate Shamoni Peterson. [R. 329]. Though Stephen D. Milner and Scott Hayworth were originally appointed as CJA counsel in 2009, Gravley filed a motion to proceed *pro se* on January 19, 2011. [R. 189]. The Court found his waiver of representation by counsel was knowing and voluntary, and granted the motion in part, permitting Gravley to proceed *pro se* for the remainder of the case. [R. 201]. As a result, Gravley represented himself at trial in April of 2011, Milner was relieved of any further responsibilities in the case, and co-counsel George Hayworth remained as Gravley's standby counsel. [Id.].

The following is a shortened factual summary taken from the Sixth Circuit Court of Appeal's Order affirming the District Court's judgment. See [R. 379 at 1–15]. Defendants Gravley, Darryl Milburne, and Darone Crawford were once all inmates at USP Big Sandy, an Inez, Martin County, Kentucky federal penitentiary, who shared a cell in Big Sandy's special housing unit ("SHU"). On November 12, 2006, an officer came to the SHU to ask Gravley and Milburne if another inmate, Shamoni Peterson, could be placed in their cell. According to

2

Crawford, Gravley consented to the request, but then said to Milburne, "We're going to eat his food," which Crawford understood to mean that they were going to physically harm Peterson.

Crawford would testify at Gravley's trial that, soon after Peterson was placed in the cell, Gravley and Milburne assaulted and killed him. According to Crawford, Milburne put a t-shirt in Peterson's mouth and cupped a hand over his face to suffocate him, while Gravley stood watching. Crawford made no attempt to assist Peterson, for fear he would be attacked next, but afterwards did help Gravley and Milburne remove evidence from the scene. Crawford also testified that Gravley asked Crawford to cut Milburne's hands with a razor blade, to make it look like Milburne had acted in self-defense.

The following morning, Shamoni Peterson was found dead in the cell. A medical examiner observed that Peterson had sustained several injuries inflicted through blunt force trauma, and concluded that the cause of death was asphyxia where the mouth area had been forcibly covered. After prison officials discovered Peterson's body, they immediately separated Crawford, Gravley, and Milburne, and questioned Crawford, who told officers what he had witnessed. Gravley was eventually transferred to a facility in Manchester, Kentucky.

At Gravley's trial, multiple former inmates testified against him. David Johnson, a Big Sandy inmate and orderly, testified that Gravley had admitted on several conversations that Gravley and Milburne had attacked Peterson. Johnson also testified that both Gravley and Milburne were members of the Bloods gang, and that Gravley, who was senior to Milburne in the gang, had ordered Milburne to attack Peterson and to take responsibility for the attack. In exchange, Milburne was to "get rank" in the gang and be paid as much as $60,000.00.

Andre Player, another federal inmate, testified that Gravley boasted about having been

3

the most senior member of the Bloods gang at Big Sandy, describing himself as the "head guy," saying that a gang-related murder had happened in his cell there, and claiming to have orchestrated the murder. Player recalled that the name of the murdered inmate was "Peterson," upon hearing this name from Gravley, and also recalled Gravley mentioning the name "Milburne." Inmates Cory Thomas and Paul Woods testified that Gravley allegedly told them that in retaliation against Peterson for his alleged statements against the Bloods, Gravley ordered Milburne to assault Peterson. Woods also testified that Gravley told him that Crawford, the third inmate, participated in the assault by kicking Peterson.

On April 1, 2011, a jury found Gravley guilty on all charges, [R. 297], and he was sentenced to life in prison on September 8, 2011. [Rs. 328, 329]. Gravley filed a notice of appeal on September 13, 2011, [R. 330], but the Sixth Circuit rejected all ten of Gravley's appellate claims, and affirmed judgment on October 15, 2014. [R. 379]; United States v. Gravley, 587 F. App'x 899, 911–18 (6th Cir. 2014). The U.S. Supreme Court denied Gravley's petition for writ of certiorari on March 23, 2015, [R. 385].

## STANDARD OF REVIEW

A prisoner has a statutory right to collaterally attack his conviction or sentence. Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) ("[B]oth the right to appeal and the right to seek post-conviction relief are statutory rights . . ."). To be entitled to habeas relief under 28 U.S.C. § 2255, the petitioner must show that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006); Mallett v. United States, 334 F.3d

4

491, 496–97 (6th Cir. 2003), *cert. denied*, 540 U.S. 1133 (2004); see also Moss v. United States, 323 F.3d 445, 454 (6th Cir. 2003), *cert. denied*, 540 U.S. 879 (2003).

If the petitioner alleges a constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." Watson, 165 F.3d at 488 (citing Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993)). Alternately, if alleging a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." Id. (citing United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990); Hill v. United States, 368 U.S. 424, 428, (1962)).

To prevail on a § 2255 ineffective assistance of counsel claim, the petitioner must prove both counsel's deficient performance and resulting prejudice to the petitioner' case. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, to prove deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 687–88. In applying this test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance . . . ." Id. Second, he must establish prejudice, showing there is a reasonable probability that but for counsel's errors the result of the proceedings would have been different. Id. at 694–95.

Notably, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004); Strickland, 466 U.S. at 697.

5

**ANALYSIS**

Gravley's ten claims have been construed as follows: (1) prosecution witness Paul Woods allegedly perjured himself at Gravley's trial; (2) the prosecution committed misconduct by failing to correct the perjured testimony of Paul Woods; (3) appellate counsel Kevin Schad was ineffective by failing to object to the perjury and the government's failure to correct transcripts on appeal; (4) the prosecution committed a Brady violation by not disclosing to Gravley "exculpatory information," in reports indicating that prosecution witness Darone Crawford suffered from mental health issues; (5) counsel Stephen Milner was ineffective by advising that he would take no further action in the case until the District Court ruled on Gravley's motion to proceed *pro se*; (6) counsel Milner made racially disparaging remarks about Gravley to another client; (7) counsel Milner was ineffective by providing only "token representation;" (8) appellate counsel Scott Williamson was ineffective by failing to inform Gravley he was no longer working on his appeal after being found guilty of unprofessional conduct in another matter; (9) appellate counsel Kevin Schad was ineffective by failing to raise valid issues on direct appeal, including alleged perjury, prosecutorial misconduct, and suppression of evidence; and (10) Gravley has discovered new evidence of prosecutorial misconduct, in a 2007 Bureau of Prisons report stating that there was a lack of evidence to charge him with murder at that time. See generally [Rs. 364 at 2–4, 387 at 2–8].

### *Gravley's Claims Regarding Woods' Perjury do not Merit Relief, Where the Sixth Circuit Found Woods' Testimony was Immaterial.*

Claims (1) and (3) are that Paul Woods committed perjury, and that the government failed to correct his false testimony. As Gravley explains in his original petition, when asked by prosecution what sentence he was serving, Woods replied he was serving a life sentence for

6

"juror conspiracy and money laundering," [R. 364-11 at 2], but according to Gravley, Woods "wasn't even a Juror and had never been charged with conspiring." [R. 364 at 3]. Gravley states that Woods was actually serving "a life sentence for a felony Distribution of Cocaine and a twenty year sentence for money laundering." [Id.]. Gravley states Woods again perjured himself by stating he had never testified against anyone before, though he had allegedly testified before a Tennessee grand jury in the past. [R. 364 at 3]. Additionally, Gravley claims that prosecution "suppressed impeachment material and allowed Woods to lie about his criminal history in order to hide Woods' true criminal history. [R. 364 at 3].

The issue of Woods' perjury was previously raised and rejected by the Sixth Circuit Court of Appeals. United States v. Gravley, 587 F. App'x 899, 917 (6th Cir. 2014). The Sixth Circuit held:

> Gravley relies on two excerpts from Woods's testimony, having to do with (1) Woods's testimony before the grand jury in Tennessee and (2) Woods's representation that he was serving a life sentence for "[j]uror conspiracy" instead of "conspiracy to distribute cocaine." On both scores, Gravley's claim fails because even if he can establish the testimony's falsity and the Government's knowledge of the falsity, the testimony was not material.
>
> . . .
>
> There is some question as to whether Woods's representation that he never had testified against anyone was false, and, if so, whether the Government knowingly presented it as such. Assuming *arguendo* that the testimony was false, however, and crediting Gravley's accusation that the Government was aware of the falsity, Gravley's claim still fails. As the District Court explained when it denied [Gravley]'s motion for a new trial, any impeachment of Woods would have been of limited value because other witnesses corroborated Woods's testimony and because the Government offered other evidence of Gravley's guilt. Accordingly, *Woods's testimony, true or false, was not material*.

Gravley, 587 F. App'x at 917 (emphasis added).

Because Claims (1) and (3) – that Woods committed perjury, and that prosecution failed

7

to correct the perjured testimony – were rejected on their merits on Gravley's appeal, they cannot be raised again in a motion to vacate. DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996) ("A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances."); Wright v. United States, 182 F.3d 458, 467 (6th Cir. 1999). Gravley alleges his Due Process was violated as a result of Woods' testimony, see, e.g., [R. 387 at 2], but to establish any Due Process violation, he would have to establish the actual falsity of the testimony, the prosecution's knowledge of the falsity, and the *materiality* of the testimony. Gravley, 587 F. App'x at 917 (emphasis added); see also United States v. Lochmondy, 890 F.2d 817, 822 (6th Cir. 1989) (*citing* United States v. O'Dell, 805 F.2d 637, 641 (6th Cir. 1986)). The Sixth Circuit has already determined Woods' testimony, true or false, was largely immaterial.

To the extent he alleges prosecution "suppressed impeachment material" by failing to correct the falsehoods to which Woods testified, Gravley's perjury-based claims can also be construed as Brady suppression of evidence claims. The claims also fail under a Brady analysis, however. There are three essential components of a true Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) *prejudice must have ensued*. Strickler v. Greene, 527 U.S. 263 (1999) (emphasis added). Woods' testimony was deemed immaterial by the Sixth Circuit. Therefore, even if Gravley could show that prosecution's failure to correct Woods' testimonial inaccuracies was a willful or inadvertent suppression of evidence favorable to Gravley's case, Gravley is still unable to show prejudice resulted from the failure to disclose Woods' statements, which were found to be immaterial. It is recommended that Claims (1) and (3) be denied.

***Gravley Cannot Show Ineffective Assistance on the Part of Appellate Attorney Schad.***

Claim (2) alleges ineffective assistance on the part of appellate counsel Kevin Schad, who was appointed as Gravley's appellate attorney on September 30, 2013, after Scott Williamson withdrew from further representation in the matter. See [R. 373]. Gravley alleges Schad was ineffective by failing to raise on appeal the issue of Woods' perjured testimony, or the prosecution's failure to correct the resulting transcripts. [R. 387 at 2–3]. Specifically, Gravley claims Schad failed to raise "constitutional claim[s] . . . concerning tampering, error(s), and unlawful expurgating of testimony." [Id. at 2].

That claim should be denied. The perjury issue was raised on appeal, and considered by the Sixth Circuit on appeal, as explained above. The Sixth Circuit Court of Appeals held that "Woods's perjury, while useful as impeachment evidence, was not likely material nor likely to have produced Gravley's acquittal for at least two reasons: (1) other witnesses corroborated Woods's testimony; and (2) the Government offered other evidence of Gravley's guilt," in the Sixth Circuit's Order affirming Defendant's conviction. [R. 379]. To show ineffective assistance, Gravley has to show both that Schad committed error, and that the error resulted in prejudice to Gravley. Strickland v. Washington, 466 U.S. 668 (1984). Where the Sixth Circuit directly addressed and denied the very claim Gravley now alleges his attorney failed to raise on appeal, Gravley cannot show any resulting prejudice as required by Strickland to establish ineffective assistance by appellate counsel. Gravley, 587 F. App'x at 917. It is recommended that Claim (2) be denied.

9

### *Gravley's Suppression of Evidence Claims Regarding Reports of Prosecution Witness Darone Crawford's Mental Illness do not Merit Relief.*

Claim (4) alleges that prosecution committed a Brady violation by failing to disclose psychological reports Gravley could have used to impeach witness Darone Crawford's credibility. According to Gravley's supplemental § 2255 petition, the undisclosed report revealed that Crawford "is bipolar, is on antipsychotic medication, hallucinates, lies, and is not credible," [R. 387 at 5], making the report "obvious[ly] material and Brady/exculpatory information." [Id.]. Gravley provides a copy of the report he claims he should have been provided. [R. 387-4]. That report – a psychological analysis of inmate Darone Crawford written by a Big Sandy official on October 4, 2006 (about a month before Peterson's murder on November 12, 2006) – relays that Crawford stated he hears voices and occasionally self-harms. [Id.].

This report by itself, without further explanation as to its potential relevance or detail regarding how it was allegedly withheld by prosecution, is insufficient to warrant relief. For one, the record indicates that Gravley was aware of Crawford's history of psychological issues, and used that information as impeachment evidence at his trial. The record shows that Gravley pursued a line of questioning at trial to impeach Crawford's credibility; during Crawford's cross-examination, Gravley asked, "do you hear voices at times in your head?" and asked whether Crawford had ever eaten feces, drank urine, or heard the voice of Chinese General Sun Tzu in his mind. [R. 348 at 32–33].

Gravley merely states he "obtained psychological reports of Darone Crawford that reveal Crawford is bipolar, is on antipsychotic medication, hallucinates, lies, and is not credible," [R.

10

387 at 5], but offers no further detail or argument. The government responds: "Gravley relies on a Federal Bureau of Prison psychological report that he asserts he should have been provided. The report notes that Crawford hears voices and is bi-polar. Gravley doesn't indicate how, from whom, or when he received this report nor does he claim it wasn't provided to him during discovery. Regardless, the report only documents Crawford's testimony at trial, which was that he hears voices." [R. 391 at 9]. The only information in the report potentially valuable to Gravley was the information that Crawford hears voices, and Gravley was able to cross-examine Crawford on that very issue. [R. 348 at 32–33]. Though Gravley claims Crawford's mental history was not disclosed to him, suggesting he lacked the opportunity to impeach Crawford with that information at trial, that allegation is directly refuted by the record.

Importantly, even assuming Gravley could show he was denied an additional opportunity to impeach witness Crawford, confrontation clause-based claims are subject to a harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673 (1986). Under that analysis, certain constitutional errors are "so unimportant and insignificant that they may, consistent with Federal Constitution, be deemed harmless and which will not require automatic reversal of the conviction," if the reviewing court declares that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 22 (1967). Because Gravley *did* question Crawford about his psychological issues in order to impeach his credibility, any errors resulting from the report's non-disclosure were harmless.

Finally, like Paul Woods' testimony, the Sixth Circuit also previously found Crawford's testimony to be immaterial. On direct appeal, Gravley claimed he was denied his Due Process right to a fair trial because the Government failed to correct false testimony by Woods and

11

Crawford.[1]" The Sixth Circuit rejected the claim, and held, "Gravley still cannot demonstrate materiality (regarding the alleged falsities in Crawford's testimony) for an important reason: Crawford's testimony already had been impeached by the testimony of other witnesses . . . [b]oth Johnson and Woods, for example, represented that Crawford had participated in the assault on Peterson." Gravley, 587 F. App'x at 917.

Therefore, even if the report were undisclosed, "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable . . . the undisclosed evidence may be cumulative, and hence not material." Id. (*citing* Byrd v. Collins, 209 F.3d 486, 518 (6th Cir. 2000)) (internal quotations omitted). In Byrd, the Sixth Circuit held that, due to the "extensive amount of impeachment information that Petitioner's counsel elicited during his cross-examination of [witness] Armstead," Armstead had been "subjected to extensive impeachment by defense counsel, and it is difficult to conclude that there exists a reasonable probability that, had the issue of Armstead's upcoming parole hearing been disclosed, the outcome in Petitioner's trial would have been different." Id. at 518–19. Similarly, the Sixth Circuit determined Crawford's testimony "already had been impeached by the testimony of other witnesses," Gravley, 587 F. App'x at 917, meaning any additional basis for impeachment within the allegedly undisclosed report would have been unlikely to lead to a different outcome.

Ultimately, the information at issue was "cumulative" and "not material," where Crawford's credibility was already called into question. Therefore, Gravley cannot show how prejudice ensued from the report's non-disclosure, and therefore cannot succeed on a Brady

---

[1] Gravley had contended that Crawford's claim he "initially t[old] [prison officials] what happened [to Peterson]," was false, because he did not make a statement to the officers who first interviewed him. 587 F. App'x at 917.

claim.  Strickler, 527 U.S. 263 (1999).  It is recommended that Claim (4) be denied.

### *Gravley's Ineffective Assistance of Trial and Appellate Counsel Claims Should All be Denied.*

In January of 2011, approximately three months before Gravley's trial began in April 2011, Gravley and Stephen Milner – Milner and Scott Hayworth were co-counsel for Gravley at the time – met with the government to discuss a possible plea agreement, where, according to Gravley, prosecution allegedly told him they would seek a superseding indictment with additional counts against him if he did not plead guilty.  See Gravley, 587 F. App'x at 918.  Gravley rejected the proposed plea agreement, and moved to dismiss the superseding indictment on grounds of prosecutorial vindictiveness, but that motion was rejected by the District Court.  Id.  Then, on January 19, 2011, Gravley filed a motion to proceed *pro se*, [R. 189], which the Court granted on February 16, 2011.  [R. 201].  The Court terminated Milner's representation, and made Hayworth standby counsel.  Gravely acted *pro se* at trial and at sentencing.  He then filed a *pro se* notice of appeal before Scott Williamson, Esq., was appointed to represent him before the Sixth Circuit from June 12 until September 11, 2013, when Williamson was replaced by Schad.  [Rs. 379-1, 391 at 10–11].

Claims (5)–(8) now allege that trial counsel Milner and appellate counsel Williamson each provided ineffective assistance.  Claim (5) alleges Gravley suffered a lapse of representation where Milner informed Gravley he would take no further action in the case until Gravley's *pro se* motion to proceed was resolved.  Claim (6) alleges Milner made racially disparaging remarks about Gravley to another client.  Claim (7) alleges Milner provided "token representation", and Claim (8) alleges counsel Williamson failed to advise Gravley that he was no longer working on his appeal, after he was found guilty of unprofessional conduct.  See

13

generally [R. 387 at 6–7].

Claim (5) alleges Gravley "suffered a lapse of representation" when Milner stated he would take no further action in the case until the Court resolved his motion to proceed *pro se*. [R. 387 at 6]. Gravley offers no further detail or argument as to this claim. Though Claim (5) alleges ineffective assistance on the part of counsel Milner, Gravley waived the right to make such a claim by choosing to proceed *pro se* at trial. The Sixth Amendment implies a right of self-representation, Faretta v. California, 422 U.S. 806, 821 (1975), and when a defendant chooses to effectuate the right of self-representation, he foregoes, as a factual matter, the benefits associated with representation by legal counsel. Id. at 834. Gravley therefore chose to forgo these benefits, when he voluntarily ended Milner's representation as his counsel, and proceeded *pro se* at trial, where he called witnesses, engaged in cross-examination, and introduced exhibits at trial. "A defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounts to a denial of effective assistance of counsel." Wilson v. Parker, 515 F.3d 682, 696 (6th Cir. 2008) (citation omitted). Gravley's conclusory statement that he "suffered a lapse of representation" by Milner is both unsupported by the record, given that Milner was not involved in Gravley's trial whatsoever, and unavailable to Gravley in light of his choice to represent himself at trial. The Court finds no prejudice resulting from Milner's limited representation which ended two months prior to Gravley's trial in April of 2011, and recommends that Claim (5) be denied.

Claim (6) alleges Milner "made racial disparaging jokes about African American and discussed [Gravley] with another client." [R. 387 at 6]. He provides no additional detail or evidence to support this claim. Generally, courts have held that "conclusory allegations alone,

14

without supporting factual averments, are insufficient to state a valid claim under § 2255." Jefferson v. United States, 730 F.3d 537, 547 (6th Cir. 2013) (internal citations omitted). Gravley's Claim (6) is conclusory on its face, and in the absence of any additional supporting evidence, should be denied.

Claim (7) alleges Milner provided ineffective assistance by admitting in an email that he was "simply making discovery request[s] to 'cover his own ass.'" [R. 387 at 6]. This claim is based upon an email obtained by Defendant which allegedly indicates Milner made such a statement, therefore admitting he was not diligently or zealously representing Defendant. For one, Gravley does not provide the email he references. Second, as explained above, Gravley is unable to show prejudice resulting from Milner's pretrial representation, where Gravley freely elected to represent himself beginning on February 16, 2011, and continuing throughout his April 2011 trial. Faretta 422 U.S. at 834; Wilson, 515 F.3d at 696. Any defendant "who elects to represent himself cannot thereafter complain that quality of his own defense amounted to denial of effective assistance of counsel." Faretta, 422 U.S. 806. Claim (7) should be denied.

Claim (8) alleges that appellate counsel K. Scott Williamson failed to notify Gravley he had ceased working on his appeal. [R. 387 at 7]. However, because Gravley was represented by counsel Schad on direct appeal, not counsel Williamson, he cannot claim ineffective assistance of counsel based on Williamson's representation. Williamson was listed as appellate counsel from June 12, 2012 to September 11, 2013, at which point Williamson was relieved, and Schad was appointed and given a new briefing schedule. [Rs. 373, 391 at 10–11]. The Sixth Circuit's order affirming Gravley's conviction confirms that Schad, not Williamson, was appellate counsel when the court considered and denied Gravley's appellate claims. See [R. 379-1]. Gravley

15

suffered no prejudice from counsel Williamson's brief involvement in the case. Gravley merely asserts he "did not receive timely and adequate representation," [R. 387 at 7], but says no more. This statement is conclusory, and such "conclusory statements are insufficient to warrant § 2255 relief." United States v. Reid, No. CIV. 6:11-7190-DCR, 2012 WL 1344985, at *5 (E.D. Ky. Mar. 27, 2012), *report and recommendation adopted*, No. CIV.A. 6:11-7190-DCR, 2012 WL 1344910 (E.D. Ky. Apr. 18, 2012). The Court finds no evidence to show ineffective assistance on the part of Williamson, and recommends that Claim (8) be denied.

Claim (9) alleges that appellate counsel Schad was ineffective by failing to include on appeal a number of "valid issues," [R. 387 at 7], namely the alleged perjury, prosecutorial misconduct, and suppression of evidence Gravley claims took place at his trial. Not only is this claim largely conclusory in nature, and should be denied on that basis, Jefferson, 730 F.3d at 547, but the record shows that the Sixth Circuit Court of Appeals previously considered and denied on appeal Gravley's claims of perjury, prosecutorial misconduct/vindictiveness, and suppression/destruction of evidence. See [R. 169-1 at 21–31]. In essence, Gravley is "impermissibly attempting to get a "second bite" at the post-conviction apple, Rawls v. Quintana, No. 14-CV-27-KKC, 2014 WL 1664266, at *3 (E.D. Ky. Apr. 25, 2014), but he can show no resulting prejudice caused by Schad's allegedly ineffective assistance, and therefore cannot meet the Strickland standard for relief on an ineffective assistance claim. Strickland, 466 U.S. 668. It is recommended that Claim (9) be denied.

### *Gravley's Claim Based Upon "New Evidence of Prosecutorial Misconduct" Should be Denied.*

Finally, Claim (10) alleges Gravley has "newly discovered evidence" of prosecutorial misconduct: a BOP report dated June 7, 2007, concerning his transfer from USP Big Sandy to

16

USP Lewisburg. [R. 387-5]. The report states that "Gravely [sic] is suspected of having serious involvement in the death of another inmate while housed in SHU at USP Big Sandy but no charges are being filed based on lack of evidence," and states he was "recommended for transfer to ensure the safety of inmate Gravely [sic] and the safety of other inmates at USP Big Sandy." [Id.].

The Court finds nothing in the 2007 BOP report to show misconduct on the part of prosecution. Gravley once again fails to articulate how or when he received this form, and fails to articulate how it warrants relief, and the Court finds its contents to be immaterial at this juncture. For one, if Gravley is claiming that the report somehow establishes that there was insufficient evidence to indict him for murder, Claim (10) is a sufficiency of evidence claim. "Section 2255 cannot be used to attack the sufficiency of the evidence by which a defendant is convicted, as that is an issue that can be raised only by direct appeal." Stephan v. United States, 496 F.2d 527, 528–29 (6th Cir. 1974); see also Mitchell v. United States, No. 2:04-CR-02, 2007 WL 325762, at *3 (E.D. Tenn. Jan. 31, 2007). Regardless, the Sixth Circuit Court of Appeals previously held that the "evidence was sufficient to support the charges against Gravley." [R. 169-1 at 29]. The Sixth Circuit's findings as to sufficiency of the evidence are supported by the record, and are in no way negated by the contents of the BOP form, which was created three years before Defendant was indicted and six years before he stood trial. Claim (10) should be denied. For the reasons discussed herein, the undersigned recommends that all of Defendant's § 2255 claims for relief be denied.

## CONCLUSION

For the reasons set forth above:

1) IT IS ORDERED that the Court's April 2, 2013 Report and Recommendation, [R. 365], be VACATED; and

2) IT IS RECOMMENDED that Defendant Dwaune Gravley's Motion to Vacate, [R. 364], and his Supplemental § 2255 Motion to Vacate, Set Aside, or Correct his Sentence, [R. 387], be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Ann, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed June 23, 2017.



Signed By:
Edward B. Atkins
United States Magistrate Judge